St. Louis Southwestern Railway Company *v.* Meyer.

Opinion delivered April 22, 1905.

Connecting carriers—injury to freight—negligence.—In the case of a through shipment of freight the last carrier cannot be held liable for the damaged condition of the freight at the time of delivery if

the only negligence shown was that the initial carrier furnished a defective car.

Appeal from Craighead Circuit Court, Jonesboro District.

ALLEN HUGHES, Judge.

Reversed.

### STATEMENT BY THE COURT.

The appellee on the 11th day of September, 1902, instituted this action, and alleged that his merchant in St. Louis, Mo., delivered to the appellant a carload of potatoes destined to Jonesboro, Ark., and that they were negligently loaded into a car out of repair; that the car leaked, and when the potatoes arrived at Jonesboro a large portion of them were frozen, and rendered worthless, and damaged to the plaintiff in the sum of $200.

The appellant, answering, denied that it received the carload of potatoes from the appellee's merchant in St. Louis, and alleged that on the evening of the 15th of December, 1901, it received at Gray's Point from its connecting carrier, the Illinois Central Railway Company, the carload of potatoes in a refrigerator car which was under seal, and that the car was offered to the appellee on the 16th of December, 1901, and he refused and neglected to receive it until the 23d of December. The appellant denied that it did not safely deliver said potatoes; denied that it loaded them; denied that it negligently carried them; denied that the car in which they were shipped was out of repair; denied that the car leaked; denied the potatoes were covered with either ice or snow when they were delivered to the appellee, and denied that the potatoes were injured in any way while in its possession.

The undisputed evidence discloses that the potatoes arrived in East St. Louis, Ill., November 19, 1901, in an Illinois Central car, No. 52317, in bulk, and remained in it until December 13, when they were unloaded, sacked and put back in the same car by the consignors, and on the same day forwarded over the Illinois Central Railway to Jonesboro. Two days later, at 10 o'clock a. m., December 15, the car was delivered to appellant

at Gray's Point in apparent good order, both as to the car and to the contents. It forwarded it, and the car reached Jonesboro at 6 o'clock a. m., December 16; was set out on team track on same day, where it was customary to deliver freight of that character, and the appellee was notified. He assigned two reasons for not unloading them: First, the weather was cold; second, he did not need them "any sooner." They remained there on the track in the car until December 23. The weather was cold, about five above on the 15th and 16th, and dropped down to zero in St. Louis on the 18th, and three below on the same day at Corning, Ark. The potatoes were stored in this particular car for a period of thirty-four days.

It was admitted that the defendant's line extends north to Gray's Point only, and there connects with the Illinois Central Railway Company, and the defendant has no warehouse at Jonesboro suitable to store perishable goods in cold weather, and it was not the custom for railroads in this part of the country to provide warehouses for storing goods in cold weather.

These facts were known to appellee. He had a warehouse constructed with a view of protecting potatoes and other perishable goods. But he requested appellant to let the potatoes remain in the refrigerator car until the weather moderated, it being then so cold he feared the potatoes would freeze before they could be removed and stored in his own house. Appellant consented to this. It was shown that a refrigerator car, properly constructed, would preserve such goods indefinitely. When the car was opened about seven days after it arrived at Jonesboro, the potatoes were found to be wet, frozen and rotten. There was evidence tending to support the verdict as to the quantity and value of the potatoes lost.

The instructions of the court are not called in question.

*S. H. West* and *J. C. Hawthorne*, for appellant.

The potatoes were held by appellants as a warehouseman after notice to remove them. 60 Ark. 375; 46 Ark. 222. Appellant was not negligent. 73 Ark. 112; 61 Am. & Eng. Ry. Cas. 178; 43 Am. Rep. 46; 28 Pac. 894; 18 W. Va. 361; 63 Mo. 230; 97 Am. Dec. 406; 79 Mass. 481; 44 N. Y. 478; 2 Am. & Eng. Ry. Cas. 166.

WOOD, J., (after stating the facts.) The presumption of negligence .arising from the condition of the potatoes at the time of delivery is fully explained by the evidence. The proof shows that appellant was not negligent, either as warehouseman or carrier. There was no delay in the transportation of the pota-toes after they were received by appellant. Appellant had them in its possession as carrier only one day. There was nothing in the appearance of the car when received by appellant to put it on notice of the defective condition. It was in apparent good order. It was furnished to appellee by the Illinois Central. The consignors of appellee received it at St. Louis, and sacked and reloaded the potatoes into it, and it was then delivered by the Illinois Central to appellant, as the last and connecting carrier, in apparently good condition, and transported by it promptly from Gray's Point to the place of destination, and there promptly offered. to appellee, who requested that appellant keep it, which was done. It appears to us that, if there be any actionable negligence in this case, it was in the furnishing of a defective car, and for that appellant was in no wise responsible.

Reversed and remanded for new trial.